Monell, J. (dissenting.)
The adjustment of damage in this case, was upon the principle applicable to average loss, as upon an open policy. The difference between a valued and an open policy is chiefly in the mode of ascertaining the loss. Under an open policy, the assured can obtain the actual value of the subject insured. In a valued policy, the valuation in the policy is conclusive. Partial or total loss has no other effect than, in case of a part destruction of the subject insured, to open a valued policy, to let in extrinsic evidence of damage; and opening the policy is merely resorting to such extrinsic evidence, to fix one element in ascertaining the loss.
The principle adopted in this case, allowed a recovery of the per centage ascertained by the difference between the actual value of cotton in a sound condition, at the port of destination, and the actual value of the cotton which arrived in its damaged state.
Such adjustment was correct, if the loss was partial. • In • respect to the 41 bales which arrived and were identified, the adjustment upon the principle applicable to arrange loss, was conceded to be correct.
Some of the cotton only, was rescued from the wreck. It was water soaked and sanded. The bales had been broken, and the marks defaced or destroyed. It was brought to New York, some of it in bulk or mass ; some in bales and parts of bales, and in bags. Of the whole number of bales (229) shipped from Matamoros, only 68 were capable of identity, 41 of those belonged to the plaintiffs, and the remainder (27 bales) belonged to one or other of three other consignees. Part of the cotton on board the brig was not rescued, but was left in the hold, and sold with the hull of the vessel. The quantity thus *609 sold was never ascertained, nor was it known to whom it belonged. The cotton which arrived in New York, and which was incapable of identity, was water soaked and twice its usual weight. After separating the 41 bales identified as the plaintiffs’ property, and the 27 bales belonging to other parties, it was not possible to determine the ownership of the remaining cotton. It was not known, and could not be, how much, nor whose, cotton had been sold with the hull of the brig. No conceivable evidence could have established any fact upon which a calculation could have been made ; nor was it possible to say that the whole, or what particular part less than the whole, did or did not belong to the plaintiffs. No comparison of weights could aid in determining the ownership, the condition of the cotton rendering a computation impossible
Upon a partial loss, the burthen of proving the nature and extent of damage to the subject insured, is upon the plaintiffs. It is essential that they should show there had been a partial loss of their property. Interest in the subject insured, even under a valued policy, is necessary, although it need not be proved. And a claim for a partial loss, involves the showing of property in the subject damaged.
A constructive total loss usually embraces the right to abandon to the underwriters. The subject insured is not physically annihilated. It frequently remains in specie, or may be so injured as to be of little value, and the assured may abandon to make a total loss.
What property had the plaintiffs in the unidentified cotton which arrived in New York ? The solution of this question can only be had by the aid of facts wholly out of the power of either party to furnish. The extent of the plaintiffs’ interest in the goods saved must depend upon the quantity totally lost. The whole of the plaintiffs’ 125 bales may have been left in the hold of the vessel and sold with the hull. There is no evidence that it was not, except what may be inferred from the supposed quantity which reached New York, which quantity was in a condition so water soaked and sanded as to leave it, at least, doubtful as to the original weight. A particular average loss *610 involves the sound value and the damaged value. Such values are ascertainable, legally, only by an inspection of the subject insured and a knowledge of the market price. They are not inferrable from the hind of property merely, nor from comparison with other and similar property.
The only evidence, in the case before us, of the value of the cotton in a sound state, was, that it was examined on its arrival in Hew York in its damaged state and estimated, by experts, to be worth sound, 90 to 92 cents a pound. Mr. Taber testified that there were many grades of cotton well known to dealers. He denominates them a’ good, good fair, fair, middling fair, good middling, middling, &c. He stated that 97 of the bales he examined were “middling good,” and 135 bales “ middling.'” He did not pretend to any knowledge of the cotton in a sound state, never having seen it, but judged of its value merely by an inspection in its damaged condition. This evidence exhibits the difficulty of furnishing any practical proof of ownership in the plaintiffs of any specified part of the cotton rescued from the wreck. The 97 bales and the 135 bales were of a somewhat different quality. Among which lot were the plaintiffs to find their property ?
The doctrine that the arrival in specie at the port of destination, of "any part of the subject insured, makes it an average loss, without regard to the extent of the damage, is founded on the reason that such part is capable of actual delivery.
And the rule that there cannot be a constructive total loss without abandonment to the underwriters, also requires that it should appear that the subject insured could not have been delivered, or was incapable of being delivered in specie, at the port of destination. } ''
If on the arrival of the cotton in Hew York the plaintiffs’ 166 bales could have been delivered, although in a damaged condition, it would have been an arrival in specie ; and the damage would have been an average loss. But, if the plaintiffs’ cotton was so intermixed with the cotton of three other owners as to render it incapable of separation or identification, and consequently of delivery, it cannot be said to have arrived in specie.
*611 In cases of involuntary or accidental commingling of the goods of several owners, the separate interests become blended, and indistinguishable. There is a quasi tenancy in common, and neither party owns the whole. (Story on Bailm. § 40. 2 Kent’s Oom. 364.) In such cases their rights can be determined only by a judicial decree, and there must be a sale of the entirety, and á distribution among the owners.
That, in the case before us, there was a commingling of the cotton, to such an extent as to render the different parts indistinguishable, is conceded. And it may be said to be further conceded that, excepting 41 bales,' neither the plaintiffs could claim, with unerring certainty, that any portion of the remaining cotton was the identical cotton shipped by them ; nor could the defendants, with like unerring certainty, insist upon its delivery.
The case, therefore, furnishes no data from which a partial loss can be estimated. The damage to the cotton was not uniform ; it was wet and sanded in different degrees ; it was without marks ; in bulk or mass, and owned in common by four several shippers.
In cases of constructive total loss the property is not wholly destroyed, but it is wholly lost to the owner, as much so as if it were annihilated. Any thing, therefore, occurring to the property, from the perils insured against, whereby it is lost to the owner, renders it a constructive total loss. If by capture, condemnation or abandonment, the property is lost to the owner, is it not equally lost if all means of reclaiming it are gone ?
In defining the meaning of “ particular average,” “ average loss,” and words of equivalent import, in contracts of marine insurance, the courts have admitted a class of losses which they have called a “ constructive total loss.” They are not, as has been seen, actual total losses of the subject, but actual total loss of the interest of the assured in such subject. To the list of constructive total losses should, I think, be added the indistinguishability of the subject from others of a *612 like kind, produced by any of the perils covered by the policy, rendering it impossible to deliver in specie.
Subjects of property which are distinguishable by any physical attributes are capable of exact identification, and are objects of sale and transfer. (Kimberly v. Patchin, 19 N. Y. Rep. 330.) Without such attributes or means of identification, to afford the means of ascertaining and describing the property, it cannot be the subject of an executed sale, so as to transfer the title from one to another. (Id.)
It is not demonstrated in this case what portion, if any, of the plaintiffs’ cotton arrived in Eew York ; and in that sense, none of it can be said to have reached the port of destination.
Suppose the subject insured had been within the memorandum clause, could the underwriters have claimed an arrival in specie ? To sustain such a claim it would be necessary to establish at least a possibility of delivering to the owner his identical property. Here, it seems to me, no such possibility existed. The undivided interests of the four owners could not be separated, nor could the cotton be divided among them.
There is no equity in the mode of adjustment insisted on by the plaintiffs. They agreed upon a valuation, and should be held to their agreement, and not be allowed to claim the advantage of a sudden, and probably unexpected rise in the market, especially in a case where, in my opinion, they have failed to establish either by proof or in law a right to open the policy.
I think there should be a new trial, unless the plaintiffs stipulate to reduce their judgment to the amount proper for them to recover, upon the principles applicable to a total loss with salvage.
Judgment affirmed.